IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KATHY G. HORCASITAS,

       Plaintiff,

vs.                                                                                                  No.  01cv1172 JHG

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Horcasitas') Motion to Reverse or Remand Administrative Decision, filed May17, 2002.  The Commissioner of Social Security issued a final decision denying Horcasitas' application for disability insurance benefits and supplemental security income.   Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

Horcasita, now forty-two years old, filed her application for disability insurance benefits and supplemental security income on June 12, 2000, alleging disability since January 12, 2000, due to lower back pain, status post laminectomy and discectomy at L-4, and hepatitis C. Horcasita has a high school education and two years of college and past relevant work as a hairstylist and salon manager.  On May 23, 2001, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Horcasitas' impairments were severe but did not singly or in

combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ further found Horcasitas retained the residual functional capacity (RFC) for sedentary work.  Tr. 15.  As to her credibility, the ALJ found Horcasitas' testimony was not wholly credible. *Id.*  Horcasitas filed a Request for Review of the decision by the Appeals Council.  On August 31, 2001, the Appeals Council denied Horcasitas's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Horcasitas seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Horcasitas makes the following arguments: (1) the ALJ's finding that she could perform the full range of sedentary work is unsupported by substantial evidence and is legally erroneous; (2) the ALJ failed to fully and fairly develop the record; and (3) the ALJ's credibility determination is unsupported by substantial evidence and is legally erroneous.

The ALJ found Horcasitas could perform the full range of sedentary work.[1] Sedentary work involves primarily sitting, with only occasional standing and walking. 20 C.F.R. § 416.967. The ALJ further found "[t]he non-exertional limitations imposed by pain and depression have very little effect on the exertional occupational base for sedentary work . . . ." Tr. 17. The ALJ's finding that Horcasitas' "non-exertional limitations imposed by pain [has] very little effect on the exertional occupational base for sedentary work" is not supported by substantial evidence. The record reflects the following:

On November 30, 1999, Horcasitas was seen at University Hospital for lower back pain. Tr. 115. The physical examination indicated Horcasitas had numbness and tingling of her left leg. *Id.* The physician ordered an MRI and prescribed physical therapy and pain medication.

On March 13, 2000, Horcasitas was seen in the emergency room of University Hospital. Tr. 87. The emergency room physician ordered an MRI. The MRI indicated "a broad based

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other criteria are met. 20 C.F.R. § 416.967(a). Occasionally means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about two hours of an eight-hour workday, and sitting should generally total approximately six hours of an eight-hour workday. Social Security Ruling 83-10, 1983 WL 31251 * 5.

central and left paracentral posterior disc protrusion at L4-5 which extends toward the left lateral recess, where it compresses the exiting left L5 nerve root and clinical correlation is suggested." Tr. 86. The physician diagnosed Horcasitas with disk herniation and admitted her to neurosurgery. Tr. 88.

On March 16, 2000, Horcasitas underwent a L 4 laminectomy[2] with bilateral L4-5 foraminotomies[3] due to a L4-5 herniated nucleus pulposus with segmental canal stenosis. Tr. 77. Prior to her surgery, Horcasitas was taking Tylenol #3, Ibuprofen, and Flexeril for her back pain. The surgery was uncomplicated and Horcasitas' neurosurgeon discharged her the first postoperative day. The surgeon's operative notes indicate Horcasita had a L4-5 herniated nucleus pulposus preoperatively and postopertively. Tr. 79. Her neurosurgeon recommended she convalesce for six weeks and continue with her medications. Tr. 77.

On March 23, 2000, Horcasitas returned to University Hospital for a follow-up examination. The neurosurgeon reported a well healed wound and opined Horcasitas was doing very well postoperatively. Tr. 92. Horcasitas reported a marked improvement in her pain. *Id.* The neurosurgeon recommended physical therapy. *Id.*

On June 13, 2000, Mary Perrault, Horcasitas' supervisor, submitted a letter concerning Horcasitas' inability to continue working as a manager/hairstylist. Tr. 73. According to Ms.

---

[2] Laminectomy is the excision of a vertebral lamina; commonly used to denote removal of the posterior arch. *Stedman's Medical Dictionary* 934 (26th ed. 1995).

[3] Foraminotomy is the surgical enlargement of the intervertebral foramen. *Stedman's Medical Dictionary* 676 (26th ed. 1995).

5

Perrault, Horcasitas returned to work after her surgery on May, 2000 and resigned June 10, 2000. *Id.*  Ms. Perrault reported Horcasitas was in constant pain during this time.  *Id.*

On September 6, 2000, Dr. Nickerson, a DDS physician, completed a Physical Residual Functional Capacity Assessment form.  Tr. 95-102.  Dr. Nickerson opined Horcasitas could perform light work.  *Id.*

On November 9, 2000, Horcasitas was seen at University Hospital for right lower back pain.  Tr. 134.  Horcasitas described her back pain as "not getting better, worse for one month" and "constant, tight/stiff" and aggravated by sitting, driving and twisting."  Tr. 134, 35.  She reported she had been to the emergency room two days prior to this visit and was prescribed Lortab (narcotic analgesic).  Tr. 135.  The physical examination indicated "no spinal tenderness" and "tenderness over the right latissimus dorsi muscles."  Tr. 136.  The physician diagnosed her with low back strain.  *Id.*

On December 27, 2000, Horcasitas was seen at University Hospital for right hip and back pain.  Tr. 130.  Horcasitas reported she had not been able to work due to her back pain.  Tr. 131.  Horcasitas described her back pain as right lower back pain that radiated to her hip but not her leg.  *Id.*  At that time Horcasitas was taking Motrin 800 mg. three times a day as needed but had not taken her Flexeril for a couple of months. *Id.*  Horcasitas also reported not being able to keep her appointment with physical therapy because she could not afford it.  *Id.*   The physical examination revealed no spinal tenderness.  Tr. 132.

On February 8, 2001, Horcasitas was seen at University Hospital for her annual pap smear and back pain.  Tr. 127.  The physician's medical notes indicate Horcasitas was taking Motrin 800

mg. three times a day and Flexeril 10 mg three times a day. Tr. 128. The physician recommended physical therapy. *Id.*

On March 8, 2001, a University Hospital physical therapist evaluated Horcasitas. Tr. 138. Horcasitas reported experiencing back pain during 1999 and 2000. *Id.* Horcasitas also reported stopping physical therapy because of a busy schedule. *Id.* This was prior to her March 16, 2000 back surgery. *Id.* Horcasitas rated her back pain as 5 to 8 on a ten point scale and reported that walking, sitting and house chores aggravated her pain. *Id.* Specifically, Horcasitas reported having poor tolerance to prolonged positioning, especially sitting, standing and walking more than thirty minutes. Tr. 139. She reported that frequently changing positions relieved her pain. 138. The physical examination indicated Horcasitas was ambulating with mild antalgia, the straight left leg raise was positive at 70 degrees, and she suffered "moderate tenderness clinically over residual surgical scar." 138. The physical therapist opined Horcasitas' complaints could be the result of adhesions or scar tissue from her surgery. Tr. 139. The physical therapist developed an exercise program for Horcasitas and instructed her to return in one to two weeks.

On March 15, 2001, Dr. Fotieo evaluated Horcasitas for back pain and scheduled an appointment with the neurosurgeon for May 8, 2001. Tr. 142. Dr. Fotieo also scheduled an MRI for April 6, 2001. *Id.*

On April 4, 2001, Horcasitas returned to see the therapist. *Id.* Horcasitas reported right sciatic pain in her back for the past two weeks. On a scale of ten, Horcasitas rated her pain as seven and reported she was unable to stand or sit for more than fifteen minutes comfortably. *Id.* The physical examination revealed some tenderness on the right pelvis. The therapist recommended increasing Horcasitas' physical therapy from one hour to two hours. *Id.*

On April 6, 2001, Horcasitas had an MRI done. The MRI indicated she had a "large posterior left paracentral extruded (to force, press or push out) disc fragment causing a moderate to severe left neural foraminal narrowing & moderate spinal canal stenosis at the L4-5 level." Tr. 147, 148.

On April 16, 2001, the physical therapist noted that Horcasitas had an MRI on April 6, 2001. Horcasitas reported she was able to walk 15-20 minutes on a treadmill with a corset but continued to experience "left lower extremity numbness with electrical sensation from hip to foot." *Id*. The therapist advised Horcasitas to keep her appointment with Dr. Fotieo on April 18, 2001, and with the neurosurgeon in May. Tr. 140.

At the April 18, 2001 administrative hearing, Horcasitas submitted a "Claimant's Recent Medical Treatment" agency form and reported taking cyclobenzaprine (Flexeril– muscle relaxant), Ibuprofen 800 mg. three times a day for pain, triamterene (diuretic/antihypertensive), and Zoloft (antidepressant). Tr. 74-76. Horcasitas also informed the ALJ that she had a "bulging disk" on her L4-5 and claimed it was "hitting on a nerve sack," resulting in pain down her leg and in numbness. Tr. 168-69. Horcasitas further informed the ALJ she had an appointment with the neurosurgeon in May for the purpose of determining whether she should have more surgery. Tr. 169.

Horcasitas also testified (1) she could sit for about fifteen minutes before she felt "very numb" and had to "walk around to loosen that area up;" (2) she could walk for a maximum of thirty minutes before she had to sit down or lie down to relieve the pressure in her lower back and hip; (4) her pain radiated down to her left ankle; (5) she could stand for fifteen to twenty minutes and had worn a corset since her surgery; (5) she could not lift anything; (6) she could not bend

8

over; (7) she was unable to vacuum and needed help with sweeping and mopping and doing the laundry; and (8) she could only drive for ten to fifteen minutes before she had to take a break. Tr. 169-74.

When a claimant complains of a pain-producing impairment, the ALJ is required to consider claimant's complaints of pain by evaluating his/her use of pain medication, attempts (medical or nonmedical) to obtain relief, the frequency of her medical contacts, and the nature of claimant's daily activities, as well as subjective measures of credibility including the consistency or compatibility of nonmedical testimony with the objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir 1995).

The record indicates Horcasitas' pain was controlled with Ibuprofen 800 mg. three times a day and Flexeril. The recommended dosage for Ibuprofen dosage for mild to moderate pain is 200 mg. three to four times a day. *Physicians' Desk Reference For Nonprescription Drugs and Dietary Supplements* 666 (20th ed. 1999). In addition, there were times when Horcasitas required narcotic analgesics for her pain. More significant is Horcasitas' April 6, 2001 MRI which indicated she had a large extruded disc fragment causing a moderate to severe left neural foraminal narrowing and moderate spinal canal stenosis at the L4-5 level. The severe foraminal narrowing and moderate spinal canal stenosis may or may not be causing Horcasitas' back pain and the electrical sensations and numbness down her left leg. Horcasitas informed the ALJ she had been told she had a "bulging disk" on her L4-5 and that it was "hitting on a nerve sack," resulting in pain down her leg and in numbness. Tr. 168-69. Horcasitas further informed the ALJ she had an appointment with the neurosurgeon in May for the purpose of determining whether she should have more surgery.

9

The Court recognizes that "[a]lthough a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Dep't of Health and Human Servs.,* 5 F.3d 476, 479-80 (10th Cir. 1993). "This duty exists even when the claimant is represented by counsel." *Id.*

A non-attorney representative from the Disability Advocacy Clinic handled Horcasitas case at the administrative level. Horcasitas's current counsel has informed the Court of the following recent medical reports that were not available to the ALJ at the time of the administrative hearing: (1) Neurosurgical Evaluation by Dr. Michael Schneier, dated May 8, 2001; and (2) Operative Report, Fusion of L3-5 pedicle deformity correction by Dr. Schneier dated May 25, 2001. Counsel also did not submit these reports to the Court. Counsel contends the ALJ was aware of Horcasitas' May appointment with the neurosurgeon yet failed to request the records. Although Horcasitas' non-attorney representative should have provided these records to the ALJ as soon as they were available, because these records are vital to the ALJ's disability determination, the Court will remand for further development of the record.

Additionally, The Medical-Vocational Guidelines (the grids) represent the Secretary's administrative notice of the jobs that exist in the national economy at the various functional levels. *See Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984). If the ALJ's findings of fact regarding a particular individual's age, education, training, and RFC all coincide with the criteria of a particular rule on these grids, the Secretary may conclude that jobs suitable for the claimant exist in the national economy and that the claimant therefore is not disabled. *Id.*

Because the grids classify RFC based only on exertional or physical strength limitations, they may not be fully applicable to claimants with nonexertional impairments. See 20 C.F.R.

404.1567; *Channel v. Heckler,* 747 at 580-81.  Nonexertional impairments are medically determinable impairments, including pain, that do not directly limit physical exertion, but may reduce an individual's ability to perform gainful work nonetheless.  *Id.* at 580.

If nonexertional impairments narrow the range of possible work the claimant can perform, the Secretary may only use the grids as a "framework" for determining whether, in light of all claimant's impairments, she has meaningful employment opportunity within the national economy.  20 C.F.R. pt. 404, subpt. P, App.2, 200 (e) (2).  In such cases, the Secretary must also produce a vocational expert to testify whether specific jobs appropriate to claimant's limitations exist in the national economy.  *Channel*, 747 F.2d at 581.

In this case, Horcasitas' medical records and her testimony indicate that her level of pain precludes applying the grids conclusively.   Accordingly, the ALJ's finding that Horcasitas' nonexertional impairment (pain) does not limit the range of sedentary jobs available to her is not supported by substantial evidence.  On remand, the ALJ should follow the *Luna* pain analysis.  *See Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)(standard for evaluating nonexertional impairment of pain).

Finally, Horcasitas contends the ALJ's credibility determination is unsupported by substantial evidence and is legally erroneous.  Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

The ALJ found the objective evidence indicated that, although Horcasitas had a severe spinal impairment, her activities of daily living were not significantly affected. Tr. 15. This finding is not supported by substantial evidence. On remand, the ALJ should reconsider his credibility determination.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision, filed May 17, 2002, is granted. This matter is remanded to allow the ALJ (1) to request Horcasitas' recent medical records; (2) to consult with a vocational expert; and (3) to reconsider his credibility determination.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**